GastOn, judge.
 

 To assist juries in complicated cases to arrive at a correct conclusion upon disputed facts, by advising them as to the nature, bearing and tendency of the
 
 proofs;
 
 but at the same time to withhold any intimation of an opinion as to the weight of the whole or any part of the testimony, is one of the arduous duties which the law enjoins upon Judges who preside at the trial of issues. This duty is the more important and the more difficult, where the evidence is entirely circumstantial, where the quality of each circumstance is to be precisely ascertained, and the effect of them combined, accurately determined by the triers. And it swell# into
 
 *608
 
 one of awful magnitude, when the issues of life and deatli depend upon .its faithful, correct,and judicious per-formancc. The exception made in this case, imposes upon us tiie responsibility of examining, whether the prisoner has well founded cause of complaint of the mani tier in which this duty was discharged by the Judge below.
 

 The exception is directed solely to' that part of the charge,'in which his Honor instructs the jury, that inconsistent and false declarations of the prisoner,iii relation to the manner in which lie obtained the bank-bills in his possession, were
 
 “
 
 evidence to prove tiiat he did not come' honestly by them.” It is insisted that this instruction was erroneous, for that in the first place, such inconsistent and contradictory declarations do not in law prove more than that
 
 some
 
 of them are false; and secondly, that if they amount to proof of a dishonest acquisition, they do not, as the judge intimates, furnish evidence that the prisoner stole the bills which the prosecutor lost, or committed the arson of which he was accused. To form a correct judgment of the validity of the objections, it is indispensable that we should first ascertain the meaning of the instruction to which they apply. Are we to understand the judge as having declared that the contradictory statements did prove a dishonest acquisition; or only,that they were evidence having á tendency to prove it, relevant to that purpose, and fit to be weighed by the triers, with a view to the determina, tion of that fact? We cannot doubt but that the former
 
 is not,
 
 and that the latter
 
 is
 
 the sense of the instruction which he intended to give, and which the jury understood his words to convey. The difference between proof of an allegation, and evidence to prove an allegation, is so obvious that we cannot permit ourselves tó believe that, it was overlooked by the judge, or confounded by the jury. It is pointed out in the beginning of “the statement” which forms á part of the transcript. «
 
 The evidence
 
 was entirely circumstantial, and
 
 consisted of the testimony
 
 of witnesses
 
 to prove
 
 &c. &c.” The'statement pretends not to affirm that any facts '«''ere
 
 rproviU,
 
 
 *609
 
 jjU^. ge£g tj,c evi,]ence offered
 
 to prove
 
 tliem, in order t(,at tI,e faring of the instructions upon testimony might be seen and determined. It was the duty of thejudge ,j.Q s|,ew tlie jury, the application of the evidence to the material facts in controversy/ and it was also his duty to refrain from the expression of an opinion whether it did or did not prove such facts. His language is appropriate to the former purpose, and is within sphere of his legitimate province; and we cannot from a weak and over-strained humanity, or in a spirit of perverse criticism, conjecture, that it may have been designed to effect, dr without intention may have effected, the latter purpose, and thus invaded the province of the.jury.
 

 Satisfied that this was the instruction given, we proceed in the exercise of our defined and limited jurisdic-4ion, .to cn,quire whether in this instruction there be le:gal error, And-upon an anxious and deliberate consideration of all that lias been urged in argument, and of all which our own reflections can suggest, we are bound :.to declare that we see no -error- Contradictory declarations with respect to a fact, do not indeed, absolutely and directly, prove more than that all of tliem cannot consist with the fact.
 
 Jill may, some
 
 of tliem
 
 must
 
 be ¡untrue. If made by an individual in regard to a matter of which lie lias positive knowledge, lie is guilty of falsehood. But the fact of falsehood once established, it becomes,'in many cases,an important piece of evidence to ascertain other facts — the causes which induced, and the ends to be promoted by a resort to falsehood. There is direct testimony of an arson,committed under circumstances, clearly indicating that a robbery was at the same
 
 time, perpetrated by the incendiary. An
 
 individual, who before the commission of these crimes was destitute of money, and of property, immediately thereafter quits the neighborhood, travels to a considerable distance to and fro without an assignable motive, is in the possession of four bank bills, constituting a large sum of money, corresponding in amount, and in the character and the respective denominations of the bills; with those stolen from the prosecutor, and busies himself in con
 
 *610
 
 verting these into bills of another kind, and of less value, for which he gives a premium.
 

 No mind capable of d rawing a conclusion from connected facts, can hesitate to acknowledge that such testimony strongly attaches to this individual,the charge of the theft and the arson. But in addition to these facts, there is another circumstance. In the course of his wanderings, he gives many relations to different persons at different places, with respect to the manner in which this money, so strangely in his possession and so strangely used, lias been acquired by him ; and these relations are wholly inconsistent with eacii other. The connection between such conduct and the motives for it,the consciousness which it indicates, and the interests which are intended to be served by it, are unquestionably matters well meriting the consideration of those, whose grave duty it is,by all the means in their power,to ascertain the truth of the imputed charge. Falsehood,diversified in its forms, hut always repeated on this point, clearly
 
 tends
 
 to shew a consciousness of dishonest acquisition, and a solicitude to embarrass inquiry and to prevent detection. That i t
 
 proves
 
 dishonest acquisition is not an inference of law,nor was it the instruction of the Judge; but that it is relevant to
 
 that fact,
 
 and is evidence for that purpose,lit to be considered and weighed by thejury, seems well warranted by reason, observ ation and experience. Whether by it-selfor in connection with the other matters testified,it produces a conviction so settled and undoubting as to induce the Jury to infer that fact,as one proved to exist, must be Jeft,as-it lias been left,to their integrity, their intelligence & their acquaintance with the ordinary concerns of human life. We see no intimation of opinion from the Judge that a dishonest acquisition of the money, in the prisoner’s possession,was evidence that he stole the money lost by the prosecutor, and committed the arson charged in the indictment. But it does appear to us, that the fact of such dishonest acquisition, supposing it established, is a circumstance which much strengthens the other evidence,ás to the identity of the bills taken from the prosecutor, with those disposed of by the prisoner. Both sets had
 
 *611
 
 been shewn to for the same amount; to consist of bills of the same bank, and each bill of each set to be of the same denomination. The prisoner acquired what he disposed of, at the time when the prosecutor lost his.— These were strong co-incidences. Add to them that the prosecutor had his taken
 
 away. dishonestly,
 
 and the prisoner acquired his
 
 dishonestly,
 
 and who does not feel its force? When better evidence cannot he had, circumstantial proof is'as admissible to identity of things or of persons, as to any other matter. No objection was taken to the admission of any part of the evidence offered to .establish this identity,- and unless it be in law inadmissible for this purpose, we are bound to consider it of a proper character, and fit therefore to be hoard and considered. The
 
 sufficiency
 
 of the evidence either to identify the property stolen, or to establish that the thief w as also the house-burner,or to shew that t he prisoner was both, are enquiries into which ave cannot enter. These were proper enquiries,
 
 first
 
 for the exclusive ami unbiased decision of the jury — and
 
 afterwards
 
 of the Judge who presided at the trial. The case shews that both have made these enquiries, each in the order prescribed by the law, and both of them,no doubt,in the conscientious discharge of duty. After explanation of the purposes for which all the various circumstances had been given in evidence, the Jury were instructed that “if these circumstances satisfied their minds, beyond a rational doubt,of the guilt of the prisoner, it was their duty to convict him
 
 ;
 
 but unless they produced this full satisfaction, it was their duty to acquit him.” Thus instructed, they have on their oaths pronounced him guilty. The Judge from whom a new trial was asked, upon his oath “to do equal justice to the public and to individuals,” refused to set aside the verdict. The judgment of the law necessarily follows, unless an error be shewn in the proceedings. None such is seen by us, and we must therefore direct the court below to pronounce sentence of death against the prisoner.
 

 Pee Cubiam. — Judgment ajfetrmbd.